UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| CLIFFORD W. OWENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:14-CV-216 |
| | ) | (PHILLIPS/SHIRLEY) |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 13 & 14] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 15 & 16]. Plaintiff Clifford W. Owens seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner").

On July 7, 2011, Plaintiff protectively filed an application for disability insurance benefits ("DIB") with an alleged onset date of March 8, 2011. [Tr. 140-41, 165]. The Social Security Administration denied Plaintiff's application initially and upon reconsideration. [Tr. 101-06]. Plaintiff timely filed a request for a hearing, and he appeared before Administrative Law Judge, Keith Pilkey, on November 27, 2012 in Morristown, Tennessee. [Tr. 111-12; 53]. The ALJ issued an unfavorable decision on December 18, 2012. [Tr. 16-36]. Plaintiff filed his appeal of the decision, which the Appeals Council declined to review on April 21, 2014. [Tr. 14-

15; 1-6].

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on May 27, 2014, seeking judicial review of the Commissioner's final decision under Section 205(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## I.     ALJ FINDINGS

The ALJ made the following findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2011.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of March 8, 2011 through his date last insured of December 31, 2011 (20 CFR 404.1571 *et seq*.).

3. Through the date last insured, the claimant had the following severe impairments: degenerative disc disease, obesity, depression, hearing loss, and amputated index finger on left hand (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except with no climbing of ladders/ropes/scaffolds; otherwise, occasional posturals, such as climbing ramps/stairs, balancing, stooping, kneeling, crouching, and crawling; in a quiet work environment, where good hearing is not necessary for safety; with no working around hazards such as unprotected heights and moving mechanical parts; able to understand, remember, and carry out simple one-to-three-step tasks; with occasional interaction with the public; in a work environment involving gradual and infrequent changes.

2

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on July 23, 1963 and was 48 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from March 8, 2011, the alleged onset date, through December 31, 2011, the date last insured (20 CFR 404.1520(g)).

[Tr. 21-31].

## II.    DISABILITY ELIGIBILITY

This case involves an application for DIB.  An individual qualifies for DIB if he or she: (1) is insured for DIB; (2) has not reached the age of retirement; (3) has filed an application for DIB; and (4) is disabled.  42 U.S.C. § 423(a)(1). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

An individual shall be determined to be under a disability only if

3

his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

4

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo,* nor resolve conflicts in evidence, nor decide questions of credibility." Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

In addition to reviewing the ALJ's findings to determine whether they were supported by

substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See Id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

IV.    EVIDENCE

On July 7, 2011, Plaintiff protectively filed an application for DIB with an alleged onset date of March 8, 2011. [Tr. 140-41, 165]. Plaintiff received a GED in 2005 and was 47 years old at the time of his application. [Tr. 170, 165]. Plaintiff has past relevant work experience as a laborer, construction worker, and assembler. [Tr. 170]. He reported that he ceased working in 2008 due to lower back pain, right leg pain, bulging discs, shoulder pain, and depression. [Tr. 169].

A. *Medical Evidence*

6

Plaintiff was injured on May 31, 2008 and sought treatment from Dr. Patrick M. Bolt of Tennessee Orthopaedic Clinic. [Tr. 555-56]. On December 11, 2008, Dr. Bolt diagnosed Plaintiff with mild spinal stenosis, severe low back pain, and thigh pain. [Tr. 555]. He noted that although Plaintiff was not a candidate for surgery, he "has had extensive nonoperative treatment including epidural steroid injections and physical therapy. He has plateaued in his improvement. He has been let go from his job . . . I have placed the patient at maximum medical improvement today." [Id.].

Plaintiff began treatment with Dr. William Kevin Bailey, board certified in physical medicine and rehabilitation, on November 17, 2009 and continued treatment through October 9, 2012. [Tr. 257, 259-306, 348-55, 407-29, 548-54]. An MRI performed on October 23, 2010 revealed lumbar spondylosis with "[d]isc desiccation in the upper lumbar spine. Mild circumferential posterior disc bulge at L2-3. Central stenosis at L2-3, L3-4, and borderline central stenosis at L4-5" with no acute bone herniation or abnormality. [Tr. 536]. An EMG performed in May 2011 was normal without evidence of radiculopathy or neuropathy. [Tr. 265-66]. A CT scan from March 2012 showed "[m]ultilevel diffuse disc bulges producing or contributing to mild canal stenosis at the L3-4 and L4-5 levels" but was negative for disc protrusion or nerve root impingement. [Tr. 533]. Dr. Bailey submitted a medical source letter to the Social Security Administration on April 21, 2011. [Tr. 257]. He stated that he had cared for Plaintiff since 2009 and noted the "progressive debility from his pain." [Id.]. Dr. Bailey assessed that Plaintiff was "essentially at a sedentary level and most likely be considered as such permanently. I do not feel he is a good candidate for any kind of prolonged stooping, standing, twisting, bending, lifting more than ten to twenty pounds maximum and certainly with no degree of frequency." [Id.]. Dr. Bailey penned a second letter to the Social Security Administration on

7

May 20, 2013.  [Tr. 558].  He noted that Plaintiff had "never succumbed to surgery but he continues to complain of pain. He has had multiple interventions including epidural steroid injections, trigger point injections, physical therapy, none of which seemed to alleviate his pain." [Id.].  Dr. Bailey reaffirmed his "permanent moderate restrictions" as set forth in the April 21, 2011 letter.  [Id.].

Dr. Mark Holland treated the Plaintiff from 2003 through 2013.  [Tr. 307-11, 334-37, 561].  In a letter dated May 10, 2011, Dr. Holland noted that the "vast majority of his visits during the time frame have included treatment for persistent anxiety and depression." [Tr. 309]. Dr. Holland noted that Plaintiff's anxiety continued despite various medications including Paxil, Celexa, and Zoloft, and he stated that Plaintiff had "chronic low back pain since May of 2008 . . . with minimal exertion."  [Id.].  Dr. Holland surmised that Plaintiff would "have substantial difficulty in obtaining or maintaining gainful employment." [Id.].  In a letter dated August 12, 2013, Dr. Holland stated that he began treating Plaintiff for anxiety with Buspar in 2003 and that his "symptoms exacerbated in 2008 and early 2009.  This was severe enough that a second agent was added to help control his symptoms." [Tr. 561].  Dr. Holland noted Plaintiff's "mental health began prior to December 31, 2011[,]" that he had attempted to work as a short order cook in October 2011 but "quit because he would 'fly off' at everyone[,]" and that "he was referred to Cherokee Mental Health at that time." [Id.].  Dr. Holland stated that he was aware of Plaintiff's back injury but that he was not the treating physician for that impairment.  [Id.].  He explained that he had ceased treating Plaintiff in 2013 as he was receiving care through Veteran Affairs Hospital System.  [Id.].

Dr. Roy Nevils conducted a psychological examination on September 19, 2011.  [Tr. 312].  Plaintiff's self-reported daily activities included driving, watching television, reading,

8

walking for brief periods around his home, taking brief naps, talking on the telephone, and visiting family every few months. [Tr. 314]. Dr. Nevils diagnosed depressive and anxiety disorders with a Global Assessment of Functioning ("GAF") score of 60. [Tr. 315]. He found that Plaintiff had "progressive limitations of life activities[,]" he was "moderately withdrawn from social interactions[,]" and would have "mild problems with concentration." [Id.]. Dr. Nevils assessed no limitations with memory or adaptability. [Id.].

Dr. Robert A. Blaine conducted a physical examination on October 3, 2011. [Tr. 317]. Dr. Blaine found that Plaintiff had a "depressed affect and [did] not appear to give reasonable effort to comply with the examination. He is very exaggerated in his pain complaints and his movements." [Tr. 318]. Dr. Blaine noted some limited range of motion in Plaintiff's cervical spine and shoulders and diagnosed shoulder, lower back, and right leg pain. [Tr. 319]. Dr. Blaine was unable to assess Plaintiff's capabilities and limitations due to his "limited cooperation with the examination especially strength testing and range of motion." [Id.].

Plaintiff received mental health treatment from Cherokee Health Systems ("CHS") in 2011 and 2012. [Tr. 356-71, 446-78]. In October 2011, Plaintiff was diagnosed with recurrent, moderate depressive disorder and a GAF of 57. [370]. On January 12, 2012, Plaintiff and his wife reported that Plaintiff's condition had improved with medication and that, although he was irritable, he was "able to control his behavior and [had] not been lashing out." [Tr. 456]. On March 5, 2012, CHS reported that Plaintiff was noncompliant with his medication and had "completely run out of pain medicine as his provider had noted he should have a surplus . . . He actually had been taking some extra and so did not have a sufficient supply to tide him over." [Tr. 449]. On April 2, 2012, Plaintiff was "doing better" but "irritability persist[ed]." [Tr. 448]. He was diagnosed with a GAF of 57. [Id.]. By June 11, 2012, his GAF was assessed at 62. [Tr.

9

446].

Dr. Pilar Vargas submitted a psychiatric RFC assessment on December 6, 2011. [Tr. 372-89]. He diagnosed Plaintiff with affective disorders, anxiety related disorders, and depression. [Tr. 372, 375]. Dr. Vargas found that Plaintiff had mild limitations in activities of daily living, moderate difficulties in social functioning, mild difficulties maintaining concentration, persistence or pace, and no episodes of decompensation. [Tr. 382].

Dr. Eva Misra conducted a physical examination on December 20, 2011. [Tr. 390]. She diagnosed Plaintiff with "chronic back pain with right leg possible radiculopathy, nonspecific shoulder pain as well with full range of motion." [Tr. 392]. She assessed that Plaintiff could occasionally lift and carry up to 20 pounds, frequently lift and carry up to 10 pounds, stand and walk for up to 6 hours in an 8-hour workday, and sit without restrictions. [Id.].

Dr. Nathaniel Briggs submitted a physical RFC assessment on January 10, 2012. [Tr. 394-402]. He found that Plaintiff could occasionally lift and carry up to 20 pounds, frequently lift and carry up to 10 pounds, stand and walk for up to 6 hours in an 8-hour workday, and sit for up to 6 hours in an 8-hour workday. [Tr. 395]. He found Plaintiff could frequently engage in all postural movements, except he could only occasionally balance. [Tr. 396]. Dr. Briggs did not give any weight to Dr. Bailey's letter of April 21, 2011, finding that his assessment that Plaintiff was limited to sedentary work was "not consistent with all evidence in file and is too vague to apply. It is also not based on current evidence." [Tr. 400]. He found Plaintiff was only partially credible in his subjective complaints of pain. [Tr. 401].

Plaintiff received physical and mental health treatment from Mountain View Veterans Medical Center in 2012. [Tr. 479-530, 545-47]. X-rays of Plaintiff's back revealed "moderate spondylosis seen from L1 to L4. Old wedging of L1 is seen, age indeterminable. There is mild

10

disk space narrowing at L1/L2 and L2/L3. Alignment is within normal limits." [Tr. 481]. The final impression included spondylosis and degenerative disc disease. [Id.]. In July 2012, Plaintiff reported difficulties with his hearing and was diagnosed with mild to moderately severe sensorineural hearing loss in both ears. [Tr. 491-500].

## B. Other Evidence

The ALJ conducted a hearing on November 27, 2012, in which the Plaintiff and Vocational Expert ("VE"), Robert Spangler, testified. [Tr. 53]. The ALJ issued an unfavorable decision on December 18, 2012. [Tr. 16-36]. Upon identifying the Plaintiff's severe impairments, the ALJ walked through Plaintiff's medical history. [Tr. 21-25]. At step four, the ALJ assessed that Plaintiff had the RFC to perform light work with additional exertional and nonexertional limitations. [Tr. 26]. In making this determination, the ALJ found that although Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . the [Plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." [Tr. 27].

The ALJ gave Dr. Bolt's opinion that Plaintiff could perform light work some weight, but "reject[ed] Dr. Bailey's opinion[,]" finding it inconsistent with the evidence and "too vague." [Tr. 28]. The ALJ also disagreed with Dr. Holland's opinion that "claimant will have substantial difficulty in obtaining or maintaining gainful employment." [Id.]. The ALJ found Dr. Holland's assessment to be "inconsistent with the objective findings of record, which indicate improvement with compliance with prescribed treatment and medication. Moreover, an EMG was negative for radiculopathy." [Id.]. The ALJ explained that Dr. Holland's opinion was "too restrictive and seems to be based on subjective complaints rather than on objective findings." [Id.]. The ALJ

11

assigned Dr. Nevils, Dr. Misra, and the state agency consultants, including Dr. Briggs, some

weight. [Id.]. In regards to Plaintiff's treating physicians, the ALJ noted that:

> The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes . . . [and] patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patients . . . While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case.

[Tr. 29].

At step five, the ALJ found that although Plaintiff could not perform past relevant work,

he could sustain such occupations as food prep worker, dishwasher, light janitor, male maid, and

non-farm animal attendant. [Tr. 30-31]. The ALJ adopted the VE's testimony of the same and

found that his opinion was consistent with the Dictionary of Occupational Titles ("DOT"). [Id.].

## V.     POSITIONS OF THE PARTIES

The Plaintiff argues that the ALJ's decision was not supported by substantial evidence.

Specifically, Plaintiff claims that the ALJ did not apply the treating physician rule to Dr. Bailey

by failing to grant him controlling weight or give good reasons for the weight assigned. Further,

Plaintiff contends that the ALJ erred in his credibility assessment and that his RFC determination

is unsupported by the record. Because of this error, Plaintiff contends that the ALJ's assessment

at step five that there are jobs in the national economy which the Plaintiff could perform is

unsupported by substantial evidence.

The Commissioner responds that the ALJ properly applied the treating physician rule in

considering Dr. Bailey's opinion and that he gave sufficient explanation for dismissing his

medical source statement. The Commissioner contends that the ALJ properly evaluated

Plaintiff's subjective complaints of pain and weighed the evidence as a whole in evaluating Plaintiff's RFC. Finally, the Commissioner answers that the ALJ's determination at step five was supported by substantial evidence.

## VI. ANALYSIS

The Court will address each of the issues presented by Plaintiff in turn.

### A. The Treating Physician Rule

The Plaintiff argues that the ALJ did not properly apply the treating physician rule to Dr. Bailey's opinion. The Court disagrees. An ALJ will consider "every medical opinion" received and will give controlling weight to the opinions of treating physicians. See 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight."). Where an opinion does not garner controlling weight, the appropriate weight to be given an opinion will be determined based upon the following factors: length of treatment, frequency of examination, nature and extent of the treatment relationship, amount of relevant evidence that supports the opinion, the opinion's consistency with the record as a whole, the specialization of the source, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c)(2-6) and 416.927(c)(2-6).

When an ALJ does not give a treating physician's opinion controlling weight, the ALJ must give "good reasons" for the weight given to a treating source's opinion in the decision. 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2). A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the

13

weight the adjudicator gave to the treating source's medical opinion and the reasons for the weight." Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (1996).

Nonetheless, although a treating physician's diagnosis is entitled to great weight, "the ultimate decision of disability rests with the administrative law judge." Walker v. Sec'y of Health & Human Servs., 980 F.2d 1066, 1070 (6th Cir. 1992) (citing King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). An ALJ does not measure medical evidence in a vacuum, but rather considers physician opinions in conjunction with the record as a whole. See 20 C.F.R. § 404.1527(b) (explaining that in considering medical opinions, the SSA "will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive."). The agency will consider such evidence as "statements or reports from you, your treating or nontreating source, and others about your medical history, diagnosis, prescribed treatment, daily activities, efforts to work, and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work." 20 C.F.R. § 404.1529(a).

In weighing a treating physician opinion, strict adherence to the rule and the factors set forth in 20 C.F.R. §§ 404.1527(c)(2-6) and 416.927(c)(2-6) is not always necessary. See Francis v. Comm'r Soc. Sec. Admin., 414 F. App'x 802, 804-05 (6th Cir. 2011) (holding that the regulations require only "good reasons" for the weight assigned a treating physician, "not an exhaustive factor-by-factor analysis," and finding that the ALJ's failure to consider the factors set forth in 20 C.F.R. § 404.1527(d)(2) was harmless error because "the ALJ cited the opinion's inconsistency with the objective medical evidence, [Plaintiff's] conservative treatment and daily activities, and the assessments of [Plaintiff's] other physicians. Procedurally, the regulations require no more."); Friend v. Comm'r of Soc. Sec., 375 F. App'x 543, 551 (6th Cir. 2010) (explaining that the treating physician rule "is not a procrustean bed, requiring an arbitrary

14

conformity at all times. If the ALJ's opinion permits the claimant and a reviewing court a clear understanding of the reasons for the weight given a treating physician's opinion, strict compliance with the rule may sometimes be excused.").

Here, the Court finds that although the ALJ provided sufficient explanation for the weight assigned to Dr. Bailey. Although the ALJ did not specifically address the treating physician rule in regards to Dr. Bailey's opinion, he noted early in his decision that Dr. Bailey had treated Plaintiff since 2009 and considered his letter from April 21, 2011 in detail. [See Tr. 21-22]. The ALJ reflected on Dr. Bailey's opinion that Plaintiff was limited to sedentary work and juxtaposed his opinion with the results of Plaintiff's various diagnostic test results, including the MRI from 2010, the EMG from 2011, and the CT Scan from 2012. [Tr. 21-24]. The ALJ specifically noted that the EMG, performed by Dr. Bailey, "was normal and demonstrated no evidence of radiculopathy or neuropathy." [Tr. 22].

In determining Plaintiff's RFC, the ALJ explained the weight assigned Dr. Bailey, rejecting his limitation to sedentary work because it was inconsistent with the remainder of the evidence, too vague, and not "based on current evidence." [Tr. 28]. The ALJ then went on to consider Plaintiff's self-reported daily activities, noting that his ability to drive, shop, watch television, read, and speak with family and friends over the phone "indicates that he is able to get about in a manner that is not significantly restricted." [Tr. 28]. The ALJ further relied on the "evidence of noncompliance and exaggeration contained in the record[,]" noting that "[t]here is evidence that the claimant has not been entirely compliant in taking prescribed medications, which suggests that the symptoms may not have been as limiting as the claimant has alleged in connection with this application." [Tr. 28]. Finally, the ALJ addressed the possible reasoning of Plaintiff's treating physicians, suggesting that "[t]he possibility always exists that a doctor may

15

express an opinion in an effort to assist a patient with whom he or she sympathizes[.]" [Tr. 29]. The ALJ surmised that, "[w]hile it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case." [Id.].

The Court notes that the ALJ did not specifically address the treating physician rule and declined to specifically distinguish Dr. Bailey from the non-treating medical sources. However, the Court finds that this error was harmless. In considering the ALJ's opinion as a whole, the Court finds that he applied a number of the factors listed in 20 C.F.R. §§ 404.1527(c)(2-6) and 416.927(c)(2-6), specifically noting Dr. Bailey's length of treatment, his opinion's consistency with the record as a whole, and various other factors, such as Plaintiff's daily activities, lack of compliance, and evidence of malingering, that contradicted Dr. Bailey's functional assessment. Agency procedure requires no more and neither shall this Court. See Francis, 414 F. App'x at 804-05; Friend, 375 F. App'x at 551. The Court finds that the weight assigned to Dr. Bailey is supported by the record. Although the Court does not give any weight to the ALJ's speculation regarding Dr. Bailey's opinion, the ALJ's notation that Dr. Bailey's opinion differs from the "rest of the evidence of record" holds water. [Tr. 29]. All of Plaintiff's diagnostic test results reveal relatively mild diagnoses. [See Tr. 536] (MRI showing no acute bone herniation or abnormality); [Tr. 265] (EMG was normal with no evidence of radiculopathy or neuropathy; [Tr. 533] (CT scan was negative for disc protrusion or nerve root impingement"); [Tr. 481] (x-ray's showing "mild disk space narrowing" and "[a]lignment within normal limits.") The opinions of Plaintiff non-treating physicians also comport with the ALJ's assessment. [See Tr. 319, 382, 392, 395-400]. Further, the Court finds that the ALJ properly considered evidence of

malingering and Plaintiff's lack of compliance with his pain medication, [see Tr. 318, 449], in weighing the consistency of Dr. Bailey's opinion with the evidence as a whole.

Yet it matters not whether this Court agrees with the ALJ, or whether this Court would have found differently. Crisp, 790 F.2d at 453 n.4. The only question before the Court is whether substantial evidence supports the ALJ's decision and whether he adhered to agency procedure in crafting his opinion. The Court finds in the affirmative on both counts. The ALJ provided "good reasons" for the weight assigned Dr. Bailey, Francis, 414 F. App'x at 804-05, and his opinion provides this Court "a clear understanding of the reasons for the weight given[.]" Friend, 375 F. App'x at 551.

Accordingly, the Court finds that the Plaintiff's argument is without merit.

## B. Credibility

Plaintiff argues that the ALJ's credibility assessment is not supported by substantial evidence. The Court disagrees. An ALJ may consider the claimant's credibility when determining the basis of pain symptoms. See Walters, 127 F.3d at 531 (explaining that "[i]n evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant."). The ALJ's findings regarding credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." Id. However, the ALJ's finding must be supported by substantial evidence. Id. Our appellate court has articulated the standard for evaluating subjective complaints as follows:

> First, we examine whether there is objective medical evidence in an underlying medical condition. If there is, we then examine (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

17

Duncan v. Sec. of Health & Human Servs., 801 F.2d 847, 853 (6th Cir. 1986).

In deciding whether the objective evidence confirms the severity of the alleged pain or whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain, the ALJ must consider the following factors: (i) daily activities; (ii) the location, frequency, and intensity of the pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (v) treatment, other than medication, received or implemented for relief of pain or other symptoms; (vi) any other measures besides medical treatment that are used or were used to relieve pain or other symptoms; (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms. Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *3 (S.S.A. July 2, 1996); 20 C.F.R. § 404.1529(c)(3). Although the ALJ is not required to address every factor, his "decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *3.

The Sixth Circuit has emphasized that "[t]his is a highly deferential standard. As a result, substantial evidence review 'gives the agency the benefit of the doubt, since it requires not the degree of evidence which satisfies the *court* that the requisite fact exists, but merely the degree which *could* satisfy a reasonable fact finder.'" Claiborne-Hughes Health Ctr. v. Sebelius, 609 F.3d 839, 843-44 (6th Cir. 2010) (quoting Allentown Mack Sales & Serv., Inc. v. NLRB, 522 U.S. 359, 377 (1998) (emphasis in the original)).

18

Here, the ALJ found that although the Plaintiff's impairments could "cause the alleged symptoms . . . statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." [Tr. 27]. The ALJ considered Plaintiff's treatment history and diagnostic test results, [Tr. 21-24], and specifically noted each of Plaintiff's impairments, explaining why they were or were not severe based on the objective medical evidence. [Tr. 27]. The ALJ then explained the weight assigned to each and all of Plaintiff's treating and non-treating physicians. [Tr. 28-29]. The ALJ further considered Plaintiff's daily activities, lack of compliance with medication and treatment plans, and evidence of malingering and exaggeration, as discussed above. [Tr. 28].

Based on this analysis, the Court finds that the ALJ's credibility assessment is supported by substantial evidence and adheres to the standards set forth in Social Security Ruling 96-7p. See Tyra v. Soc. Sec. Admin., 896 F.2d 1024, 1030 (6th Cir. 1990) (explaining that "the ALJ may dismiss a claimant's allegations of disabling symptomatology as implausible if the subjective allegations, the ALJ's personal observations, and the objective medical evidence contradict" the alleged severity of symptoms). In Tyra, the Sixth Circuit found that the plaintiff's subjective complaints were properly dismissed "because the medical and testimonial evidence failed to confirm the severity of the pain." Id. The ALJ made similar findings here, based on his consideration of the record as a whole, and the Court is equally persuaded.

The Court finds that the ALJ's analysis was thorough, detailed, and consistent with agency requirements. See Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *2 (an ALJ's credibility assessment "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that

19

weight."). In this case, the ALJ has met that burden. It is clear from his decision that the ALJ weighed the evidence in its entirety in determining that the alleged severity of Plaintiff's symptoms was not credible. Therefore, the Court finds that the ALJ's determination of credibility is based on substantial evidence and shall be upheld. Accordingly, the ALJ's RFC assessment is supported by substantial evidence and is hereby affirmed.

## C. Whether Plaintiff Can Perform Jobs Available in Significant Numbers in the National Economy

The Plaintiff argues that because the ALJ's RFC assessment was flawed the hypothetical posed to the VE was inconsistent with Plaintiff's functional abilities. This argument is moot. The Court finds that the ALJ's RFC assessment is supported by substantial evidence, and therefore any hypothetical based on that RFC is valid. See Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987) ("Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a 'hypothetical' question, but only 'if the question accurately portrays plaintiff's individual physical and mental impairments.'") (quoting Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984)).

Although the Plaintiff argues that the hypothetical posed to the VE was flawed because there was not substantial evidence that Plaintiff "could perform a full range of light work from an exertional standpoint[,]" the ALJ's first hypothetical did not include a RFC of a "full range of light work." [Doc. 14 at 13, see Tr. 26]. In fact, the ALJ's hypothetical matched his assessed RFC verbatim, finding that Plaintiff could perform light work with additional exertional and nonexertional limitations. [See Tr. 26, 73]. Because the Court has already determined that the ALJ's RFC is supported by substantial evidence, any argument refuting the validity of a hypothetical question containing this RFC is without merit.

20

The Plaintiff further argues that the VE's testimony was vague and uncertain. [Doc. 14 at 13-14]. The Court disagrees. Here, the VE responded to the ALJ's first hypothetical, which incorporated Plaintiff's RFC. [Tr. 73]. He stated that based on such a RFC, there were several jobs in the national economy which such an individual could perform. [Id.]. The ALJ expounded on the VE's testimony during the hearing, [see Tr. 74] (clarifying the percentages employed by the VE), specifically found that the VE's testimony in regards to the first hypothetical was consistent with the DOT, and adopted the VE's testimony that Plaintiff could perform occupations such "food prep worker, dishwasher, light janitor, male maid, and non-farm animal attendant." [Tr. 31]. The Court finds that the ALJ's decision is supported by substantial evidence. See Varley, 820 F.2d at 779; see also Infantado v. Astrue, 263 F. App'x 469, 476 (6th Cir. 2008) (explaining that "although a hypothetical question need not incorporate a listing of the claimant's medical conditions, the vocational expert's testimony, to be reliable, must take into account the claimant's functional limitations, i.e., what he or she "can and cannot do.") (quoting Webb v. Comm'r of Social Sec., 368 F.3d 629, 632–33 (6th Cir.2004)). The first hypothetical directly incorporated Plaintiff's limitations, and the VE testified that such an individual could perform a number of occupations in the national economy. The ALJ properly relied on this testimony in his decision, and the Court finds that the VE's testimony provides substantial evidence in support of the ALJ's decision. See Varley, 820 F.2d at 779.

Accordingly, the Plaintiff's argument is without merit, and the Court finds that there is substantial evidence at step five to find that there is work that exists in the national economy which the Plaintiff could perform.

## VII.    CONCLUSION

Based upon the foregoing, it is hereby **RECOMMENDED**[1] that Plaintiff's Motion For Summary Judgment **[Doc. 13]** be **DENIED**, and the Commissioner's Motion for Summary Judgment **[Doc. 15]** be **GRANTED**.

Respectfully submitted,


_____s/ C. Clifford Shirley, Jr._
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).